UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SOUTHERLAND,

            Petitioner,

                                        CASE NO. 04-CV-73365-DT
        v.                              JUDGE VICTORIA A. ROBERTS
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

MARY BERGHUIS,

            Respondent.
_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      E.    *Ineffective Assistance of Counsel (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
                  a. Failure to Communicate Plea Offer (Claim II) . . . . . . . . . . . . . . . . . . . . . . . . . 13
                  b. Conceding Petitioner's Guilt (Claim III(A)) . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                  c. Failure to Object to Prosecutorial Misconduct (Claims III(B)-(E)) . . . . . . . . . . . 18
            3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      F.    *Prosecutorial Misconduct (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                  a. Comment on Petitioner's Silence (Claims III(B) & IV) . . . . . . . . . . . . . . . . . . 20
                  b. Appeal to the Jury's Sympathy (Claims III(C) & IV) . . . . . . . . . . . . . . . . . . . . 22
                  c. Attack on Defense (Claims III(D) & IV) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
                  d. Arguing Facts Not in Evidence (Claims III(E) & IV) . . . . . . . . . . . . . . . . . . . 24
      G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner James Southerland is a state prisoner, currently confined at the Brooks Correctional Facility in Muskegon, Michigan.

2.     On October 21, 1998, petitioner was convicted of six counts of first degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a), following a jury trial in the Oakland County Circuit Court.  On November 6, 1998, he was sentenced to a six concurrent terms of 22-50 years' imprisonment.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     WAS IT ERROR FOR THE TRIAL COURT TO RULE THAT THE DEFENDANT-APPELLANT'S STATEMENT, GIVEN TO POLICE UNDER THE MISTAKEN BELIEF THAT HE WOULD NOT BE INCARCERATED IF HE MADE ADMISSIONS AGAINST HIS PENAL INTEREST AND WITHOUT THE BENEFIT OF COUNSEL, WAS MADE UNDERSTANDINGLY AND VOLUNTARILY AND WAS THEREFORE ADMISSIBLE AGAINST HIM AT TRIAL?

II.    WAS SUFFICIENT RELIABLE AND LEGALLY ADMISSIBLE EVIDENCE PRESENTED DURING THE DEFENDANT-APPELLANT'S TRIAL TO SUPPORT THE JURY'S FINDING OF GUILT BEYOND A REASONABLE DOUBT ON SIX COUNTS OF FIRST DEGREE CRIMINAL SEXUAL CONDUCT?

III.   DO THE SENTENCES IMPOSED HEREIN OF A MINIMUM TERM OF TWENTY TWO YEARS AND A MAXIMUM TERM OF FIFTY YEARS IN PRISON, PURSUANT TO THE DEFENDANT-APPELLANT'S CONVICTIONS FOR SIX COUNTS OF FIRST DEGREE CRIMINAL SEXUAL CONDUCT, SAID SENTENCES TO BE SERVED CONCURRENTLY, CONSTITUTE AN ABUSE OF THE TRIAL

2

2:04-cv-73365-VAR-PJK   Doc # 27   Filed 12/12/05   Pg 3 of 26   Pg ID 912

COURT'S SENTENCING DISCRETION SUCH THAT THEY VIOLATE
THE PRINCIPLE OF PROPORTIONALITY?

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Southerland*, No. 217103, 2001 WL 755378 (Mich. Ct. App. Feb. 2, 2001) (per

curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the

Michigan Supreme Court.  Further, petitioner raised two additional claims:

IV.     WAS DEFENDANT DENIED HIS RIGHT TO A FAIR TRIAL UNDER
THE MICHIGAN AND FEDERAL CONSTITUTIONS BY THE
PROSECUTOR'S INTENTIONAL MISCONDUCT IN GIVING
IMPROPER AND HIGHLY PREJUDICIAL ARGUMENT TO THE JURY
WHERE HE: DENIGRATED THE DEFENDANT, HIS DEFENSE,
DEFENSE COUNSEL, ARGUED FACTS NOT IN EVIDENCE, SHIFTED
THE BURDEN OF PROOF AND MADE DIRECT REFERENCES TO
DEFENDANT'S FAILURE TO TESTIFY.

V.      THE CUMULATIVE EFFECT OF THE ERRORS MADE BY TRIAL
COUNSEL DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL AND THE FAILURE OF
APPELLATE COUNSEL TO RAISE THE ISSUES OF TRIAL
COUNSEL'S ERRORS WAS EQUALLY VOLATIVE [sic] TO
DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL
ON APPELLATE REVIEW.

The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See*

*People v. Southerland*, 465 Mich. 864, 634 N.W.2d 355 (2001).

5.      In November 2001, petitioner filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, raising the two additional claims (asserting prosecutorial

misconduct and ineffective assistance of counsel) that he sought to appeal to the Michigan Supreme

Court.  The trial court denied the motion based on petitioner's failure to establish actual prejudice

as required by MICH. CT. R. 6.508(D)(3)(I).  *See People v. Southerland*, No. 1998-159934-FC

3

(Oakland County, Mich., Cir. Ct. May 13, 2003).  Petitioner thereafter filed applications for leave

to appeal in the Michigan Court of Appeals and the Michigan Supreme Court, asserting the

following claims:

    I.      THE DEFENDANT WILL HURDLE THE "CAUSE" AND "PREJUDICE"
           PRONGS OF MCR 6.508(D)(3)(a-b) EVEN THOUGH THE TRIAL
           COURT HELD THE DEFENDANT DID NOT.

    II.      DEFENSE COUNSEL DID NOT CONVEY TO THE DEFENDANT THAT
           A PLEA BARGAIN WAS OFFERED TO HIM BY THE OAKLAND
           COUNTY PROSECUTOR'S OFFICE IN WHICH [sic] THE DEFENDANT
           WOULD HAVE ACCEPTED, THUS, COUNSEL WAS INEFFECTIVE.

    III.      THE DEFENDANT'S TRIAL AND APPELLATE COUNSELS WERE
           INEFFECTIVE WITHIN THE MEANING OF THE SIXTH AMENDMENT
           TO THE UNITED STATES CONSTITUTION AND CONST 1963, ART 1
           §20, BASED ON THE CUMULATIVE ERRORS REPORTED WITHIN
           THIS ISSUE.

          A.    DEFENSE COUNSEL (IN EFFECT) PLEAD[ED] THE
                  DEFENDANT GUILTY TO THE HIGHEST OFFENSE.

          B.    THE PROSECUTION REFERRED TO THE DEFENDANT'S
                  SILENCE.

          C.    THE PROSECUTION APPEALED TO THE SYMPATHY OF THE
                  JURY.

          D.    THE PROSECUTION BROUGHT UP FACTS NOT SUPPORTED
                  BY THE EVIDENCE ABDUCTED [sic] AT TRIAL.

    IV.      THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BY
           THE PROSECUTOR'S INTENTIONAL TRIAL MISCONDUCT.

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for

leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." *People v. Southerland*, 470 Mich. 860, 680 N.W.2d 419

(2004); *People v. Southerland*, No. 249368 (Mich. Ct. App. Oct. 31, 2003).

4

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 30, 2004.  As grounds for the writ of habeas corpus, he raises the claims that he raised on appeal of his motion for relief from judgment, as well as additional claims (raised in the motion for relief from judgment proceedings but not specifically denominated as separate claims) that the prosecutor improperly attacked the defense, and that counsel was ineffective for failing to object to this prosecutorial misconduct.

7.      Respondent filed his answer on March 11, 2005.  He contends that petitioner's claims are procedurally defaulted, and in the alternative that the claims are either without merit or not cognizable on habeas review.

8.      Petitioner filed a reply to respondent's answer on April 19, 2005.

B.      *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction and the evidence introduced at trial are accurately summarized in the prosecutor's brief on appeal in the Michigan Court of Appeals:

> This case arose out of Defendant's molestation of his 9-year-old daughter, Kristie.  Evidence at trial revealed the following.
> Kristie, d.o.b. 10/17/88 (I, 104-105),[1] lived in Rochester with her mom, Bonnie, her dad, Defendant, her seven-year-old sister Felicia, and her 3-year-old brother James (I, 106-107).  Bonnie worked an evening shift at her job from 3:15 p.m. to 11:45 p.m., so Defendant would watch the kids in the evening (I, 110-111, 170).
> Kristie testified that Defendant touched her "PP" with his finger, his mouth, and his penis (I, 108, 116), after she finished her evening showers.  It happened about once a week for a couple of months (I, 137).
> Kristie testified that the first incident happened in Defendant's bedroom one evening in February of 1998 (I, 138, 142, 111-112).  Kristie testified that Defendant

---

[1]"I" refers to the trial transcript dated October 19, 1998; "II" refers to the trial transcript dated October 20, 1998; and "III" refers to the trial transcript dated October 21, 1998.

5

penetrated Kristie's vagina with his finger and moved his fingers for a short time (I, 120, 139).

Another incident happened another evening in February of 1998 (I, 111-112). Kristie had just gotten out of the shower (I, 109-110). Defendant came and got her and took her into his bedroom (see I, 110, 113). He closed the door (I, 124). As Kristie was lying down on the bed (I, 113), Defendant put his mouth on her "PP" (I, 111). Kristie testified that Defendant moved his tongue up and down for about 10 minutes – he stopped when Kristie's sister got out of the shower (I, 112).

Defendant again touched her with his mouth the same way later that same month (I, 112). That time it took place in Kristie's bedroom atop Kristie's upper bunk bed (I, 113-114).

In a fourth incident, in March of 1998, Defendant again performed cunnilingus on Kristie in his bedroom (I, 112, 114-115).

Defendant also twice had intercourse with 9-year-old Kristie in his room (I, 116-118). Kristie testified that Defendant put lotion on his penis and then put it inside her and moved up and down (I, 116-117). Defendant ejaculated (I, 119). Some of the semen got on Kristie's leg, so Defendant made her go take another shower to wash it off (I, 119-120).

Kristie testified that one evening Defendant got into the shower with her and asked her to put her mouth on his penis (I, 125). Kristie said no (I, 125).

Kristie testified that Defendant told her not to tell anybody what had happened (I, 115). He told her that if she told, he would probably have to go to jail for a long time (I, 115). Kristie did not tell her mother, fearful that Defendant might do something to her (I, 123-124). The first person she told was her best friend, Ashley Haddad (I, 121). Kristie and Ashley had watched a little bit of a dirty movie at Ashley's house (I, 125-126). Kristie thought it was "kind of scary" (I, 126). After they stopped the movie, she confided to Ashley that her (Kristie's) dad had touched her in a bad spot that way (I, 122, 129).

Ashley testified that Kristie told her that sometimes when she got out of the shower, her (Kristie's) dad would come and get Kristie, take her in the bedroom, lock the door, make Kristie get undressed an[d] lie on the bed, and then lick her down in her private area (I, 196, 203, 206). Kristie indicated to Ashley that it had happened more than once (I, 196). Kristie made Ashley promise not to tell anyone (I, 197). But Ashley, who testified that she wasn't good at keeping secrets, told her (Ashley's) mother about a week later (I, 197). Ashley's mother then telephoned the school attended by both girls (I, 197-198).

Kristie's mom, Bonnie, first learned what had been going on when she was contacted by a social worker at Kristie's school (I, 173-174). After meeting with the social worker on March 27th, Bonnie took Kristie and the other kids to stay at their grandmother's house (I, 175). When Bonnie confronted Defendant the next day, he initially denied the allegations (I, 177). However, in a conversation on March 29th, Defendant admitted to Bonnie that he had touched Kristie, and that he knew it was wrong (I, 177-178). Defendant was upset and crying when he made the admission (I, 178). Defendant said that he wanted to get help and wanted them to be a family

again (I, 179, 183).

On Monday, March 30, 1998, Bonnie took Kristie to the hospital to be examined by a doctor (I, 179). The doctor who examined her testified that Kristie reported that her father had penetrated her vaginally and anally with his penis and had fondled her with his hands (II, 9-10). She seemed very embarrassed when talking about it (II, 10). The examination revealed that Kristie's hymen was not in tact [sic] (II, 14). That was consistent with her description of what had happened (II, 16). Although there were no visible lacerations or bruising, the doctor testified that such injuries would have healed within mere days of being inflicted and would have been minimized by the use of lubrication (II, 15-16, 25).

Detective Carol Liposky of the Oakland County Sheriff's Department testified that she interviewed Defendant on Thursday April 23, 1998 (II, 40-41). She asked Defendant if he knew why she had wanted to speak to him, and Defendant replied that he knew that it was about a matter of sexual conduct with his daughter (II, 42). Det. Liposky asked Defendant to explain what he meant (II, 43). Defendant then launched into a narrative (II, 43).

Defendant said that it started as a little thing and just kept going (II, 43). He explained that it started with an incident one evening in December of 1997, when Kristie came into his bedroom and told him that her "thing" hurt (II, 43, 44). Defendant told Det. Liposky that Kristie pulled down her panties – the only thing she was wearing – and lay down on his bed (II, 45). Defendant stated that he rubbed her clitoris with his index finger for a couple of minutes (II, 45). Det. Liposky asked defendant if he had been aroused by that, and Defendant replied, "kind of" (II, 45).

Defendant told Det. Liposky that the next incident was 3 or 4 days later (II, 46). Defendant said that he walked into Kristie's room and found her with her hands in her pants playing with herself (II, 46). Defendant watched for a couple of minutes and then took her into his bedroom (II, 46). He had Kristie lie on his bed and he again touched [her] with his finger (II, 47). Defendant then stood up and masturbated, ejaculating onto the floor (II, 47). Afterward, Defendant told Kristie to go to bed (II, 47). Defendant told Det. Liposky that Kristie said OK, but warned that if he didn't let her stay up late the following night she would tell mom (II, 47).

Defendant described another incident that happened a couple of weeks later (II, 47). He said that Kristie walked naked into his bedroom after taking a shower (II, 47). She laid down next to him on the bed (II, 48). Defendant then started rubbing her body and kissed her on the mouth (II, 48). Defendant then rubbed his penis on Kristie's thigh for 10-15 minutes (II, 48). Defendant told Kristie to go to bed but she said no (II, 48-49). Defendant then went into the bathroom and masturbated while Kristie watched (II, 48-49).

Defendant told Det. Liposky that about a week later, in late January or early February, Kristie walked naked into the living room after taking a shower (II, 49). Defendant claimed that Kristie walked over and sat on his lap (II, 49). Defendant and Kristie then went into Defendant's bedroom, where Defendant got undressed (II, 49). Defendant said that he playfully picked up Kristie and threw her onto the bed (II, 50). Defendant then kissed her neck, and worked his way down, licking her

chest, stomach and her vagina (II, 50). Defendant then got some lotion and put it on his penis before rubbing his penis against Kristie's clitoris (II, 50). Defendant explained to the detective that he did not penetrate Kristie because her vaginal opening was too little (II, 50). Defendant said that Kristie asked him if that's what "sex" was, and he replied yes, but that she would have more fun if her vagina was bigger (II, 50). Defendant said that after rubbing his penis against her for 10-15 minutes, he went into the bathroom and "finished off" (II, 50). Defendant told Kristie to wipe the lotion off of herself (II, 50-51).

Defendant said that the next incident happened in mid-February (II, 51). He said that Kristie came out of the shower, naked with a towel wrapped around her hair (II, 51-52). She went into Defendant's bedroom and lied down on the bed (II, 52). Defendant told Det. Liposky that he got on top of Kristie and kissed her neck and breasts (II, 52). Defendant then licked her vagina (II, 52-53).

Defendant then described one more incident to Det. Liposky. He said that, later in February, he walked into his bedroom and found Kristie lying naked in his bed (II, 54). Defendant took off his clothes and lied down next to her (II, 54). Defendant licked her vaginal area for a couple of minutes (II, 54-55). Then he put some lotion on his penis, laid it against her vaginal area and started an upwards stroking motion with it (II, 55). Defendant told Kristie to wipe herself off and then he went into the bathroom and masturbated (II, 55).

Defendant said he warned Kristie that if she ever told anyone what they were doing, he would go away for a long time (II, 55).

Defendant told Det. Liposky that he knew what he had done was wrong (II, 56). But, he explained that Kristie kept flaunting her naked 9-year-old body seductively (II, 56).

Det. Liposky then, for the first time, mentioned the specific allegations that had been made by Kristie (II, 57). The detective asked Defendant if he had ever licked her vagina while she was lying on her top bunk bed (II, 57). Defendant said yes – he had forgotten about that time – and that he had masturbated and ejaculated into a towel while he performed cunnilingus on Kristie (II, 57-58). Det. Liposky asked Defendant how many times Kristie had seen him ejaculate, and Defendant said a couple of times (II, 58). Defendant then recounted another incident in which he had rubbed his penis against Kristie's vagina until she said it hurt (II, 59). Defendant then ejaculated on her stomach (II, 59). When Kristie said he'd peed on her, Defendant said, "no that's excitement coming out" (II, 59). Det. Liposky asked Defendant if he had ever asked Kristie to put his penis in her mouth, and he said that he had once, but Kristie said no (II, 59). Defendant said that Kristie had touched his penis 3 or 4 times (II, 59-60). When the detective asked Defendant whether he had told his wife the truth, he said no, he lied because he didn't want all these things coming at her all at once (II, 60-61).

Appellee's Br., in *People v. Southerland*, No. 217103 (Mich. Ct. App.), at 1-7. Petitioner presented

as an exhibit a Michigan Department of Social Services report, but offered no other evidence or

testimony in his defense.  *See* Trial Tr., dated 10/20/98, at 107.

C.     *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar."  *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Even assuming that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits.  As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts.  Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v.*

9

*Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate that appellate counsel was ineffective petitioner

must show, *inter alia*, that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528

U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  Given that

the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted

claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See*

*Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d

824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of

petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).[2]

E.      *Ineffective Assistance of Counsel (Claims II & III)*

Petitioner first contends that both his trial and appellate attorneys were constitutionally ineffective in a number of respects.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These

_____

[2]Petitioner's first claim asserts that he has established cause and prejudice to excuse his procedural default, and does not raises a separate substantive claim for habeas relief.  Accordingly, this first claim is not discussed further.

12

two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

    2.    *Trial Counsel*

    *a. Failure to Communicate Plea Offer (Claim II)*

Petitioner first contends that trial counsel was ineffective for failing to communicate to him a plea offer by the prosecutor. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

"A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the

13

*Strickland* test." *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). To satisfy the prejudice element of the *Strickland* test, petitioner must show "that there is a reasonable probability the petitioner would have pleaded guilty given competent advice." *Id*. Of course, the antecedent question in resolving such a claim is whether the prosecutor in fact extended any plea bargain to defense counsel. *See Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir. 2004); *Wanatee v. Ault*, 101 F. Supp. 2d 1189, 1200-01 (N.D. Iowa 2000). Here, petitioner's claim founders on this antecedent question.

Petitioner has presented no evidence to support his claim that the prosecutor offered a plea bargain to his defense counsel. Nor does the record provide any basis to believe that such an offer may have been propounded. Petitioner's claim is based solely on a single comment from the trial judge during a hearing on a preliminary motion. Petitioner was not present at this hearing, at which the prosecutor, defense counsel, and the court discussed the schedule for the case. The parties agreed to waive a final pre-trial hearing. The trial court also agreed to this, stating: "All right. Then, we'll waive any further final pre-trial. There'll be no Cobb discussions after today. He knows that?" Hr'g Tr., dated 10/2/98, at 4.[3] From this brief statement, petitioner extrapolates (a) that already there must have been *Cobbs* discussions at that time, and (b) that the *Cobbs* discussions must have resulted in a firm offer by the prosecutor which was not communicated to petitioner. Nothing in the record supports these inferential leaps. The record is devoid of any mention of any plea discussions, whether pursuant to *Cobbs* or otherwise. Further, the trial court's statement, coming

---

[3]The trial court's reference in this statement was to *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), which permits a defendant to plead guilty pursuant to the trial court's initial evaluation as to the appropriate sentence, subject to the defendant's right to withdraw his plea if the actual sentence imposed is more severe.

14

immediately after noting that there would be no final pre-trial hearing, merely indicates that the trial court would not undertake a *Cobbs* evaluation after the date of the hearing. The statement does not remotely suggest that any *Cobbs* or other plea discussions had in fact occurred, and even less does it suggest that the prosecutor actually made any plea offer to defense counsel.

Nor is petitioner entitled to an evidentiary hearing to further develop the facts of this claim. As explained above, the trial court's simple reference to *Cobbs* does not provide any evidence that a plea deal was offered by the prosecutor, and petitioner's conclusory assertion that there was such a deal is insufficient to necessitate an evidentiary hearing. *See Arredondo v. United States*, 178 F.3d 778, 783 (6th Cir. 1999); *David v. United States*, 134 F.3d 470, 478 (1st Cir. 1998) (In denying relief without holding an evidentiary hearing, "[t]he district court was not obliged to credit the petitioner's threadbare allusions to a phantom plea bargain. Who, what, when, where, and how details might have placed matters of ascertainable fact at issue and thus have bolstered the case for an evidentiary hearing, but none were forthcoming. . . . In the absence of any particulars, the lower court justifiably treated the petitioner's conclusory averments as mere buzznacking."). Accordingly the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Conceding Petitioner's Guilt (Claim III(A))

Petitioner next contends that counsel was ineffective for conceding his guilt to the highest offense charged both in counsel's opening statement and in his closing argument. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Counsel's trial strategy was to concede, consistent with the evidence of petitioner's statements to his wife and Detective Liposky, that petitioner did inappropriately touch the victim one time, but to argue that that was the extent of petitioner's crime. In making this case, counsel

15

uttered the two statements upon which petitioner relies on support of his claim.  First, during his

opening statement, counsel stated:

> And then the snowball starts coming down the mountain and at the bottom of it is James when this avalanche arrives of charges.  Now, we have at least six, not at least, we have six charges of which he has been accused and we're probably going to hear lots of other stories too on the stand, I don't know, because I don't know what she's going to say.
>
> Now, the other part of the case that the prosecutor in calling it simpl[y] referred to is, James.  His wife confronts him, you know, the school told me, the people protective services told me, maybe Detective Liposky told her, whatever, hey, there's something going on here.  This seems to be investigation going on is regarding sexual abuse activity and you did, I didn't do anything, I didn't do anything.
>
> In his first response to his wife which I suggest to you may be a natural first response, I didn't do anything, I didn't do that.  And later the investigation moves forward, but we're talking about I think again within the same day or two days and she confronts James again.
>
> And I'm not going to stand here and tell you my client is innocent of all wrong doing, he's not, I'm not going to tell you that – he said to his wife crying I did touch her, he told that to his wife.  I did not do any of the other things. – ashamed of it I'm going to get help and I want to be a family.  That's all I did.
>
> And I understand that this avalanche of charges that have cascaded down upon me, I did not do these things.

Trial Tr., dated 10/19/98, at 99-101.  During closing argument, counsel continued on this theme,

attempting to call into question Detective Liposky's rendition of petitioner's confession to her by

noting that it was inconsistent with the statement to his wife in which petitioner admitted to touching

the victim one time:

> Well, in opening statement I told you that James did a bad thing.  He did touch her as his daughter said opening  words [sic].  His wife confronted him about allegations and his first reaction on the initial confrontation was I think what would be probably a normal response in that situation, denial, I didn't do anything, I didn't do it.  You got to admit something like that and that's what he did.  They went out the next day had the family get together of sorts, talked, and he cried and admitted it.  I did wrong, I did wrong and Carol called him and I will come in and he went in.  And he went in to tell what he had done.  He admitted to his wife he did touch her daughter.  It's in there, you heard it from the testimony.
>
> And he did that.  And he told his wife you heard, and at this point in time

16

> these people aren't making up a defense or a story to defend this case, this is real life stuff going on in that car with a man admitting to his wife about his child. They aren't making up stories to come up with a defense to a criminal charge. I want to get help, I did it, I'm wrong, I touched her one time, that's wrong, I want to get help, I want us to be a family together.

Trial Tr., dated 10/20/98, at 136-37.

Contrary to petitioner's argument, counsel's comments did not amount to a plea of guilty in violation of his Sixth Amendment rights. It is true that "counsel lacks authority to consent to a guilty plea on a client's behalf; moreover, a defendant's tacit acquiescence in the decision to plead guilty is insufficient to render the plea valid." *Florida v. Nixon*, 125 S. Ct. 551, 560 (2004). Nevertheless, the Court in *Nixon* declined to equate a concession of guilt made as part of a trial strategy with a plea of guilt. In that case, defense counsel conceded his client's substantive guilt and focused on trying to spare his client from the death penalty during the sentencing phase of the proceedings. The Court rejected the defendant's claim, reasoning that despite counsel's concession, the defendant

> retained the rights accorded a defendant in a criminal trial. The State was obliged to present during the guilt phase competent, admissible evidence establishing the essential elements of the crimes with which [defendant] was charged. . . . Further, the defense reserved the right to cross-examine witnesses for the prosecution and could endeavor, as [counsel] did, to exclude prejudicial evidence. In addition, in the event of errors in the trial or jury instructions, a concession of guilt would not hinder the defendant's right to appeal.

*Id*. at 561 (citations omitted). For these reasons, the Court rejected the state court's "erroneous equation of [counsel's] concession strategy to a guilty plea[.]" *Id*. The Court also explained that the normal *Strickland* standard governs the analysis of counsel's strategic decision. *See id*. at 561-62.

The lesson of *Nixon*, as reflected in cases decided both before and after that decision, is "that counsel's concession of a client's guilt does not automatically constitute deficient performance."

17

*Young v. Catoe*, 205 F.3d 750, 759 (4th Cir. 2000). More specifically, "conceding guilt to one count of a multi-count indictment to bolster the case for innocence on the remaining counts is a valid trial strategy which, by itself, does not rise to the level of deficient performance." *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002). As the *Holman* court explained, "[c]onceding an indefensible charge is thought to build credibility with a jury by acknowledging the overwhelming evidence of guilt for that particular charge, creating goodwill and trust that can be applied towards arguments attacking the remaining charges." *Id.*; *see also*, *Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990) ("[T]here is a distinction which can and must be drawn between . . . a tactical retreat and . . . a complete surrender.").

Here, counsel's strategy amounted to a tactical retreat, not a complete surrender. Petitioner was charged with six separate counts of first degree criminal sexual conduct. These charges were supported by significant evidence, including the victim's testimony, petitioner's statements to his wife, and petitioner's confession to Detective Liposky. In the face of this evidence, counsel argued that the victim and Detective Liposky were not credible and that the true story was reflected in petitioner's statement to his wife: that he touched the victim one time. In effect, counsel was arguing that the jury should, at most, find defendant guilty of one count of second degree criminal sexual conduct for one act of touching, rather than six counts of first degree criminal sexual conduct involving penetration. In light of the evidence against petitioner, this was a reasonable trial strategy. *See United States v. Thomas*, 417 F.3d 1053, 1058-59 (9th Cir. 2005); *Turrentine v. Mullin*, 390 F.3d 1181, 1208 (10th Cir. 2004). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

   *c.  Failure to Object to Prosecutorial Misconduct (Claims III(B)-(E))*

18

Finally, petitioner contends that trial counsel was ineffective for failing to object to the various instances of prosecutorial misconduct raised in his habeas petition. As discussed below however, *see infra* Part F.2, none of the prosecutor's comments amounted to misconduct, and thus any objection would have failed. Because counsel cannot be deemed ineffective for failing to raise a meritless objection, *see Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993), the Court should conclude that petitioner is not entitled to habeas relief on this claim.

   3.   *Appellate Counsel*

Finally, petitioner contends that his appellate counsel was ineffective for failing to raise on direct appeal the claims that he raises in this habeas proceeding. As explained above, to prevail on an ineffective assistance of appellate counsel claim, petitioner must show, *inter alia*, that his omitted claim would have succeeded on appeal. *See Robbins*, 528 U.S. at 285-86; *McCleese*, 75 F.3d at 1180. Because, as discussed above, petitioner cannot show that his underlying trial counsel claims are meritorious, and because, as discussed below, petitioner cannot show that his prosecutorial misconduct claims are meritorious, he cannot show that appellate counsel was ineffective for failing to raise these claims on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Prosecutorial Misconduct (Claims III & IV)*

Petitioner next claims that he was denied a fair trial by several instances of prosecutorial misconduct. The Court should conclude that petitioner is not entitled to relief on these claims.

   1.   *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough

19

that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2.    *Analysis*

a. *Comment on Petitioner's Silence (Claims III(B) & IV)*

Petitioner first contends that the prosecutor impermissibly commented on his silence. In support of this claim, petitioner points to two arguments made by the prosecutor. First, during closing argument, the prosecutor summarized the testimony of petitioner's wife:

> On Saturday, she confronted her husband. What did he say? I didn't do it.
> Common sense tells you that it's probably a pretty ordinary response to those allegations, but then on the next day on Sunday when they're driving around in the car he said, yeah, I touched her. I touched her. Use your common sense. People going to minimize. Is he going to come out and say how he touched her. No, he's going to say I touched her.

Trial Tr., dated 10/20/98, at 116. Responding to defense counsel's closing argument, the prosecutor returned to this theme on rebuttal:

20

What's the other defense?  Mr. Southerland talked to Bonnie, oh, I touched our daughter one time.  Okay.  What does he say when he goes into the detective's office?  I touched her one time?  Count them.  By my count for those of you who were keeping tract [sic] he talked about cunnilingus four times, digital penetration four times and placing his penis inside her three times on top of doing it on the bunk bed with her.  Having showers with her, he talked about a lot.  You didn't hear any evidence from Carol Liposky that it just happened one time, I touched her one time.

What he was doing for his wife was minimizing.  You think he's going to get up in there in front of his wife and admit that?

*Id.* at 145.

Petitioner's claim fails for two reasons.  First, petitioner has not indicated how this comment reflected on his silence.  On the contrary, the prosecutor's argument related to the statements that petitioner had actually made to his wife, not to his silence.  Such a comment does not implicate a criminal defendant's right to remain silent.  *Cf. Anderson v. Charles*, 447 U.S. 404, 408 (1980) (per curiam) (cross-examination into prior inconsistent statements does not make "unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.  As to the subject matter of his statements, the defendant has not remained silent at all.").

Second, even assuming that the prosecutor's argument amounted to a comment on petitioner's silence, the comment was not impermissible.  The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]"  U.S. CONST. amend. V.  This provision applies to the states via the Due Process Clause of the Fourteenth Amendment.  *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).  The Supreme Court has determined that this provision "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  *Griffin v. California*, 380 U.S. 609, 615 (1965).  Likewise, "it would be fundamentally unfair and a deprivation of due process to

21

allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 618 (1976).

Nevertheless, the Court's subsequent cases have made clear that *Griffin* and *Doyle* are limited to situations in which the defendant's silence was induced by the governmental assurances embodied in the *Miranda* warnings. *See Fletcher v. Weir*, 455 U.S. 603, 606 (1982) (per curiam) (post-arrest statements made before *Miranda* warnings are given may be commented upon by prosecutor, noting that the Court has "consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him."); *Jenkins v. Anderson*, 447 U.S. 231, 240 (1980) (pre-arrest silence may be used for impeachment because "no governmental action induced [the defendant] to remain silent before arrest."). Here, petitioner's statements to his wife, and any silence he may have exhibited during those conversations, were not induced by the *Miranda* warnings and thus the prosecutor's comments did not violate *Griffin* and *Doyle*. Furthermore, here there was "no governmental action [which] induced [petitioner] to remain silent," *Jenkins*, 447 U.S. at 240, because petitioner made the statements to his wife, and *Miranda* does not apply to statements made to private persons. *See Arizona v. Mauro*, 481 U.S. 520, 527 (1982). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Appeal to the Jury's Sympathy (Claims III(C) & IV)

Petitioner next contends that the prosecutor impermissibly appealed to the jury's sympathy. In support of this claim, petitioner points to the prosecutor's comment on the victim's credibility:

> The second thing is demeanor. Recall how she acted when she was up on that witness stand. She might have had a smile on the outside, but you could tell by what she was doing to that rubber band in her hand something terrible was going on, on the inside of her. She shredded that rubber band. It wasn't an easy thing for her

22

> to do to sit up here in front of you all and tell you what happened to her.  She tried the best she could, she might have gotten out of order, she might have gotten out of sync based on the questions they were asking her, but her demeanor was telling us she was trying, she wasn't trying to avoid any questions.  She wasn't trying to evade the questions.  And recall at the end of her testimony how tired she was.  She would have answered that the moon was made out of cheese at that point in time.

Trial Tr., dated 10/20/98, at 112.

Petitioner has failed to show how this comment impermissibly appealed to the jury's sympathy.  When read in context, it is clear that the prosecutor's comments were not designed to elicit sympathy for the victim.  The prosecutor did not ask the jury to convict out of sympathy for the victim or appeal to the jury to act as the conscience of the community.  Rather, the comments were designed to explain why there may have been inconsistencies in the victim's testimony and to explain why her demeanor supported a conclusion that she was credible.  As such, the comments were not improper ones directed toward the jurors' sympathies, but rather were proper comments made "in order to understand the strengths and weaknesses of [the victim's] testimony."  *Millender v. Adams*, 187 F. Supp. 2d 852, 875 (E.D. Mich. 2002) (Rosen, J.).  Accordingly, the Court should conclude that these comments were not improper.

### c.  Attack on Defense (Claims III(D) & IV)

Petitioner next argues that the prosecutor improperly attacked defense counsel.  During rebuttal argument, the prosecutor responded to defense counsel's closing argument in which defense counsel highlighted the inconsistencies in the victim's testimony.  The prosecutor stated:

> He talks about inconsistency.  One of these trials, I know it's going to happen some day Mr. Pentz is going to come in here and he's going to say, ladies and gentlemen, that victim was so consistent, you got to convict my client.  I'm waiting for that to happen.  It hasn't happened yet because he wants it both ways.
>
> Listen to how he wants it.  The fact that she's inconsistent she must be lying.  She's inconsistent, she's lying.  Now, if he were to come in here and Kristie were perfect every time she talked to anybody involved in this case, you know what he

23

would say?  She's talking like a parrot, she's telling the truth every single time, it's memorized, she must be lying.  He wants it both ways and he can't have it both ways.

Ask yourself how hard it is for a defense attorney to stand over here for an hour and beat up on a little kid?  Think it's that tough?  Ladies and gentlemen, it's a very, very low hurdle it doesn't take much effort at all and he did it.  He did it for an hour.  Did she remain consistent that she was touched?  Yeah.

Trial Tr., dated 10/20/98, at 143-44.

Again, petitioner has failed to demonstrate that this comment was improper.  As with the comments discussed above, the prosecutor merely sought to explain the inconsistencies in the victim's testimony, and why those inconsistencies did not render the victim unworthy of belief.  While the prosecutor did disparage defense counsel somewhat for "beating up" on a child, that isolated comment was not sufficiently improper and prejudicial to deprive petitioner of a fair trial.  *Cf. United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Arguing Facts Not in Evidence (Claims III(E) & IV)

Finally, petitioner contends that the prosecutor improperly discussed facts not introduced into

24

evidence.  During rebuttal argument, the prosecutor commented on the overall defense strategy, saying: "A whole lot of blameship going on here.  I wish we would have had a video tape at the sheriff's department.  I wish we would have had a tape recorder."  Trial Tr., dated 10/20/98, at 146.  Again, however, petitioner has failed to show how this comment was improper.  The prosecutor did not refer to any facts outside of the record; indeed, the comment does not assert any facts at all.  Nor did the prosecutor's comment suggest that any tape did in fact exist.  On the contrary, the prosecutor merely stated that he wished that such a tape did exist so that it could show who was telling the truth and who was lying.  The prosecutor's wish that certain evidence existed did not amount to a reference to any facts which were not introduced at trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Conclusion*

        In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:12/12/05

| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 12, 2005. |
| --- |
| s/Eddrey Butts |
| Case Manager |

26